UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FIRST PLUS FUNDING, INC.; FIRST ALLIED FINANCIAL SERVICES, INC.;** and **RELIANCE MORTGAGE SERVICE**, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>**UNITED SHORE FINANCIAL SERVICES, LLC** d/b/a UNITED WHOLESALE MORTGAGE,<br><br>       Defendant. | Case No.: 2:20-cv-13278<br>Honorable Laurie J. Michelson<br>Magistrate R. Steven Whalen |

---

SOMMERS SCHWARTZ, PC
Jason J. Thompson (P47184)
Alana Karbal (P82908)
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
akarbal@sommerspc.com

LAW OFFICES OF SCOTT GLOVSKY
Scott Glovsky
CA Bar No. 170477
343 Harvard Avenue
Claremont, CA 91711
(626) 243-5598
sglovsky@scottglovskylaw.com

*Attorneys for Plaintiffs*

FOLEY & LARDNER LLP
Norman C. Ankers (P30533)
Jennifer Z. Belveal (P54740)
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226
(313) 234-7176
nankers@foley.com
jbelveal@foley.com

*Attorneys for Defendant*

---

**PLAINTIFFS' MOTION TO PRECLUDE EX-PARTE
COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS**

Pursuant to Fed. R. Civ. P. 23(d) and this Court's inherent authority to manage its docket, Plaintiffs move this Court for an Order precluding Defendant United Shore Financial Services, LLC d/b/a United Wholesale Mortgage from having ex-parte communications with putative class members, as more fully described below. Plaintiffs rely upon the case law, rules, and arguments set forth in the accompanying Memorandum in Support.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court GRANT their Motion and enter an Order requiring the following:

1) The parties, including the parties' counsel, not engage in any unsolicited pre-certification communications regarding this action, any claims or defenses relating to UWM's extension of the EPO from 6 months to 12 months, and including, specifically, settlement of the alleged damages, with any putative class member unless pre-approved by the Court;

2) Defendant shall provide to Plaintiffs (a) a complete list of all putative class members UWM has discussed the extended 12-month EPO or settlement of the related commission amounts discussed since December 11, 2020 and during which such discussions were had without legal counsel for the brokers being present; and (b) copies of all said communications in writing, or electronic form, between itself and putative class members;

3) A status conference following production of the above items and completion of the Rule 30(b)(6) deposition on the issues of ex-parte communications between UWM and putative class members to discuss the issues and need for, or termination of, continued restrictions on UWM's communications with putative class members, including whether corrective measures are appropriate based on what was learned in discovery; and

4) Any further relief the Court finds necessary and appropriate.

Dated: June 15, 2022                    Respectfully Submitted,

                                        **SOMMERS SCHWARTZ, P.C.**

                                        */s/ Jason J. Thompson*
                                        Jason J. Thompson (P47184)
                                        Alana Karbal (P82908)
                                        One Towne Square, 17th Floor
                                        Southfield, Michigan 48076
                                        (248) 355-0300
                                        jthompson@sommerspc.com
                                        akarbal@sommerspc.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **FIRST PLUS FUNDING, INC.; FIRST ALLIED FINANCIAL SERVICES, INC.;** and **RELIANCE MORTGAGE SERVICE**, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>**UNITED SHORE FINANCIAL SERVICES, LLC** d/b/a UNITED WHOLESALE MORTGAGE,<br><br>    Defendant. | Case No.:  2:20-cv-13278<br>Honorable Laurie J. Michelson<br>Magistrate R. Steven Whalen |

SOMMERS SCHWARTZ, PC
Jason J. Thompson (P47184)
Alana Karbal (P82908)
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
akarbal@sommerspc.com

LAW OFFICES OF SCOTT GLOVSKY
Scott Glovsky
CA Bar No. 170477
343 Harvard Avenue
Claremont, CA 91711
(626) 243-5598
sglovsky@scottglovskylaw.com

*Attorneys for Plaintiffs*

FOLEY & LARDNER LLP
Norman C. Ankers (P30533)
Jennifer Z. Belveal (P54740)
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226
(313) 234-7176
nankers@foley.com
jbelveal@foley.com

*Attorneys for Defendant*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO PRECLUDE EX-PARTE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................................. ii

I.    BACKGROUND AND FACTS ....................................................................................1

II.   ARGUMENT ................................................................................................................4

    A. This Court Has the Authority to Manage its Docket and Control Pre-Certification Communications Between UWM and with Putative Class Members ........................4

    B. UWM is Undermining the Integrity of this Class Action by Engaging in Ex-Parte Communications with Putative Class Members ..........................................7

    C. There is a Sufficient Record to Support the Limited and Narrow Relief Requested by Plaintiff ..................................................................................................9

III.  CONCLUSION ...........................................................................................................11

CERTIFICATE OF SERVICE .................................................................................................13

# INDEX OF AUTHORITIES

**Federal Cases**

*Abdallah v. Coca–Cola Co.*,
  186 F.R.D. 672 (N.D. Ga. 1999) ........................................................................................... 8

*Belt v. Emcare Inc.*,
  299 F.Supp.2d 664 (E.D. Tex. 2003) .................................................................................... 8

*Cheverez v. Plains All Am. Pipeline, LP*,
  No. CV15–4113 PSG (JEMx), 2016 WL 861107 (C.D. Cal. Mar. 3, 2016) ........................... 11

*Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.*,
  214 F.R.D. 696 (S.D. Ala. 2003) ........................................................................................... 7

*Cty. of Santa Clara v. Astra USA, Inc.*,
  No. 05-cv-03740, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ......................................... 7, 10

*Dietz v. Bouldin*,
  579 U.S. 40 (2016) ................................................................................................................ 5

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ............................................................................................................ 6, 9

*Hampton Hardware v. Cotter & Company, Inc.*,
  156 F.R.D. 633 ..................................................................................................................... 8

*Hanna v. Plumer*,
  380 U.S. 460 (1965) .............................................................................................................. 5

*In re NLO, Inc.*,
  5 F.3d 154 (6th Cir. 1993) .................................................................................................... 5

*In re Oil Spill by the Oil Rig 'Deepwater Horizon'*,
  No. 10-md-02179, 2011 WL 323866. (E.D. La. Feb. 2, 2011) ............................................... 6

*In re Sch. Asbestos Litig.*,
  842 F.2d 671 (3d Cir. 1988) ................................................................................................ 10

*Jones v. Jeld-Wen, Inc.*,
  250 F.R.D. 554 (S.D.Fla.2008) ............................................................................................. 7

*Keystone Tobacco Co. Inc. v. U.S. Tobacco Co.*,
  238 F.Supp.2d 151 (D.D.C. 2002) ........................................................................................ 7

*Kleiner v. First Nat'l Bank of Atlanta*,
  751 F.2d 1193 (11th Cir. 1985) .................................................................................. 7, 8, 10

*Mevorah v. Wells Fargo Home Mortgage, Inc.*,
  No. 05–1175, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ...................................................... 6

*Stevens v. Hutchinson*,
  No. 1:13-CV-918, 2017 WL 11527043 (W.D. Mich. Apr. 18, 2017) ......................................... 5

*Wright v. Adventures Rolling Cross Country, Inc.*,
  No. 12–982, 2012 WL 2239797 (N.D. Cal. June 15, 2012) ....................................................... 6

*Zarate v. Younglove*,
  86 F.R.D. 80 ................................................................................................................................ 11

## **Federal Rules**

Fed. R. Civ. P. 23 ................................................................................................................................ 5

Fed. Rule 23(b)(3) ............................................................................................................................... 7

Fed. Rule 23(d) ............................................................................................................................. 6, 10

Fed. Rule 23(d)(1) ........................................................................................................................... 5, 6

Fed. R. Civ. P. 23(d)(1)(A)-(b) ........................................................................................................... 6

Fed. R. Civ. P. 23(d)(1)(B) ............................................................................................................... 11

Fed. R. Civ. P. 30(b)(6) ....................................................................................................................... 3

**I.    BACKGROUND AND FACTS**

By way of the briefing already filed relative to Defendant United Shore Financial Services, LLC d/b/a United Wholesale Mortgage's ("UWM") two motions to dismiss Plaintiff's Class Action Complaint ("Complaint") (ECF Nos. 7, 11; *see also* ECF Nos. 23, 24), the Court has received extensive briefing on the facts and claims in this case. In short, this is a straightforward breach of contract matter with a relatively limited and narrowly defined putative class, class action claims and time period. The putative class consists of mortgage brokers for whom UWM allegedly and wrongfully changed a contract term, which had the effect of seizing, or otherwise recouping, certain brokers' commissions. (ECF No. 1). Essentially, UWM unilaterally redefined the vesting rules for already-earned commissions to extend the vesting term from six to twelve months, and this resulted in lost commission dollars for approximately 100 brokers.

During this Court's August 5, 2021 status conference, and at this Court's encouragement (*see* ECF No. 18), the parties agreed to suspend discovery for the sole purpose of exploring settlement. (*See* ECF No. 20; *see also* ECF No. 19)[1]. That agreement was predicated on a good faith belief – stated aloud by all attorneys – that the cost of litigating the dispute could exceed the cost of a settlement, or perhaps even the total damages at issue. (**Ex. A**, Declaration of Jason J. Thompson at ¶ 3). Settlement discussion ensued, but, ultimately, Defendant failed to provide Plaintiffs with sufficient information upon which the parties could continue such discussions and, consequently, they ended unsuccessfully. Shortly thereafter, new defense counsel appeared. More recently, and in furtherance of the settlement goal, Plaintiffs again agreed to adjourn several deadlines relative to deposition notices to allow for renewed settlement negotiations with new defense counsel. (*Id.* at ¶ 5).

---

[1] These discussions with UWM were via their first law firm (*see* ECF No. 38).

1

On June 7, 2022, counsel for both parties held a settlement conference call. It was during this time that Plaintiffs confirmed reports that UWM has been speaking with putative class members, outside the presence of counsel, perhaps even to settle and/or resolve their claims against the company. More specifically, counsel for Plaintiffs confronted defense counsel with the direct question of whether UWM was engaged in communications with putative class members about the case, and perhaps obtaining settlements of the subject commission claims. (**Ex. A** at ¶ 6). Defense counsel noted that their understanding was that their client is in "regular contact" with putative class members as part of ongoing business relationships between UWM and its brokers and that "some of the potential claims may have actually been resolved."[2] (*Id*. at ¶7). Counsel for UWM further claimed that they were "not in a position to comment" as to the specifics of the ex-parte communications or whether the claims were being resolved in full or at a discounted value; but counsel also could not deny that they were being settled. (*Id*. at ¶ 8). Interestingly, counsel for UWM advised plaintiff's counsel that the original estimation of money "UWM has recouped" from its brokers under the retroactively applied 12-month EPO (i.e. "less than $870,000" (ECF No. 7-2 at ¶ 25)), as provided by UWM's own witness, Julie Plotnik (*see id*), has since been reduced to $671,967.11. However, when asked about the approximately $200,000 difference between the figures, and specifically, if it was attributable to settlements with putative class members obtained in the ex-parte communications post filing of the Complaint, defense counsel said they did not know. (**Ex. A** at ¶ 10).

Also during the June 7th call, the parties' counsel had a conversation regarding the law regarding, and possible impropriety of, UWM's ex-parte settlement communications. (*Id*. at ¶ 9).

---

[2] By way of further example, defense counsel stated, "[T]hese are brokers that UWM is in constant communication with and, in many instances, they have resolved the claims." (**Ex. A** at ¶ 7).

2

Plaintiffs' counsel asked for the communications to stop. (*Id.*) And, upon the immediate conclusion of the call, counsel for Plaintiffs 1) provided defense counsel with recent briefing and applicable case law on the issue, and 2) once again demanded that UWM discontinue the above described communications with putative class members to allow the parties the opportunity to continue their settlement negotiations without the distraction, and added expense, of motion practice. (*Id*. at ¶¶ 9, 11). Defense counsel accused counsel for Plaintiffs of issuing a "threat[,]" and said they had a meeting with their client scheduled for the very next day, Friday June 10th, during which they would discuss Plaintiff counsel's request. Counsel also said they would "not be in a position to respond to [counsel's] demand until late [Friday] or early Monday."

There was a lack of follow-up from UWM's counsel on Friday, and therefore, Plaintiffs' prepared the instant Motion along with a Fed. R. Civ. P. 30(b)(6) deposition notice on the topic. As an additional remedy to prevent the ex-parte communications and potential abuse of class members, early preparation of a class certification motion is also underway.  That work was performed as a direct result of UWM's refusal to cease the ex-parte communications. Such actions have negatively impacted this case by:

1) creating distance between the parties' settlement negotiation efforts and, for all intents and purposes, halted them[3];
2) distracting the parties' focus from settlement to the potential impropriety of the ex-parte communications;
3) significantly and needlessly increasing the parties' workload and growing cost of attorneys' fees; and
4) frustrating this case's management.

Unsurprisingly, there is has been a deepening loss in the level of trust between the parties. Plaintiffs' counsel was disappointed by UWMs prior counsel's broken promises, and now they have been blindsided by not only what they view as nefarious activity but also by UWM's brass

---

[3] For example, UWM's actions have stopped, by order of this Court, or on its own volition.

3

refusal to confirm they will discontinue such activity once caught. As recently as yesterday, June 14th, UWM refused to stop the communications even for **one week** to allow settlement talks to continue without the interruption of the instant motion practice. (**Ex. A** at ¶ 15).

As noted, UWM has confirmed the brokers' reports that UWM is engaged in ex-parte talks with putative class members, but *what has been discussed* has not yet been confirmed, including whether the talks involved settlements; repayment of the total value of the brokers' commissions, or a fraction thereof; or releases. Therefore, Plaintiffs' counsel cannot yet determine definitively whether harm has been done, if it has then to what extent, and what, if any, corrective measures are needed. UWM only repeats its position that (1) the ex-parte discussions with brokers do not trigger any court rules; and (2) the brokers deserve no protection because they are not retained clients, but rather, only putative class members.[4]

Thus, the questions involved in Plaintiffs' Motion include:

(1) Whether UWM's actions have triggered any provisions of the Federal Rules of Civil Procedure;

(2) Whether putative class members deserve any protection; and if so,

(3) Whether the Court has the authority to enter a corrective order in this instance.

Plaintiffs contend that the answer to all three questions is undoubtedly, "Yes".

## II. ARGUMENT

### A. This Court Has the Authority to Manage its Docket and Control Pre-Certification Communications Between UWM and with Putative Class Members

There is little new to say about the dangers of a defendant speaking to its employees about settling their claims outside the presence of their attorneys during a pending lawsuit. The unequal bargaining power and potential for abuse is obvious. Principally, the Supreme Court has

---

[4] These arguments were discussed between the parties prior to the filing of the instant Motion.

4

established that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016); *see also Stevens v. Hutchinson*, No. 1:13-CV-918, 2017 WL 11527043, at *1 (W.D. Mich. Apr. 18, 2017). The Sixth Circuit has described that inherent power as "unquestionabl[e]" and "substantial." *In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993). That power, however, must be exercised in a harmonious manner with the Federal Rules of Civil Procedure. *Id.* (citing *Hanna v. Plumer,* 380 U.S. 460, 471 (1965)).

Two federal rules are at issue here: Rule 16 and Rule 23. Rule 16 gives district courts broad authority to manage their dockets and it is designed to encourage the court to take an active role in the management of the litigation. *See* Patrick M. Regan, *Preliminary considerations – Purpose of Rule 16*, LITGTORT § 32:3. This goal is accomplished by authorizing the court to exert significant influence over cases from the earliest stages of the litigation. *See id*. Under this Rule, as well as Rule 23, the Court is empowered to protect putative class members, and to issue orders to protect its authority to manage pending cases and its inherent authority as a federal court. *See* Fed. R. Civ. P. 23. Taking actions that serve to needlessly protract litigation and drive up expenses is clearly contrary to the efficient operation of the judicial system.

Rule 23 also applies in this instance by the very fact that Plaintiffs' Complaint was *filed* as a putative class action. ECF No. 1. Specifically, Rule 23(d)(1) provides the following:

> (d) Conducting the Action.
>     (1) In General. In conducting an action under this rule, the court may issue orders that:
>         (A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;
>         (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:
>             (i) any step in the action;
>             (ii) the proposed extent of the judgment; or

>>> (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;
> (C) impose conditions on the representative parties or on intervenors;
> (D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or
> (E) deal with similar procedural matters.

*Id.* Rule 23 thus contemplates instances as present themselves in the instant case, including where the Court may enter an order that "determine[s] the course of proceedings or prescribe[s] measures to prevent undue repetition or complication in presenting evidence or argument"; "to protect class members and fairly conduct the action"; and "giv[e] appropriate notice to some or all class members. Fed. R. Civ. P. 23(d)(1)(A)-(b). This is because class actions "present opportunities for abuse as well as problems for courts and counsel in the management of cases...a district court has both the duty and the broad authority" to supervise communication between the parties and potential class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). The Court is specifically authorized to issue orders that protect the process and rights of absent class members under Rule 23(d).

In fact, the Court's duty to oversee communications with potential class members exists even *before* a class is certified. *In re Oil Spill by the Oil Rig 'Deepwater Horizon'*, No. 10-md-02179, 2011 WL 323866, at *2. (E.D. La. Feb. 2, 2011). "[I]t is still reasonable to assume that an employee would feel a strong obligation to cooperate with his or her employer in defending against a lawsuit." *Mevorah v. Wells Fargo Home Mortgage,* Inc., No. 05–1175, 2005 WL 4813532, at *4 (N.D. Cal. Nov. 17, 2005). Courts can prohibit pre-certification communications by employers to discredit a class action brought for the benefit of their employees. *See Wright v. Adventures Rolling Cross Country, Inc.*, No. 12–982, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012). Additionally, a court may exercise its authority to restraint "efforts by a defendant to encourage

6

potential class members not to participate in the class action, thereby reducing potential liability." *Cty. of Santa Clara v. Astra USA, Inc*., No. 05-cv-03740, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201–03 (11th Cir. 1985)). Thus, this Court possesses an inherent authority to manage the ex-parte communications at issue in this case.

### B. UWM is Undermining the Integrity of this Class Action by Engaging in Ex-Parte Communications with Putative Class Members

For obvious reasons, settlements in cases, including class actions, are usually encouraged. Nevertheless, settlements cannot come "at the expense of the class action mechanism itself to the detriment of putative class members." *Keystone Tobacco Co. Inc. v. U.S. Tobacco Co.*, 238 F.Supp.2d 151, 154 (D.D.C. 2002). Courts recognize that unilateral communications between a party and putative class members have the potential for coercion. *See e.g., Jones v. Jeld-Wen, Inc.,* 250 F.R.D. 554, 561 (S.D.Fla.2008). Indeed, "communications from the class opponent to the class may be coercive" particularly "[i]f the class and class opponent are involved in an ongoing business relationship." *Kleiner*, 751 F.2d at 1202–1203 (citations omitted). That is precisely the context the Court is faced with here – An employer discussing the 12-month EPO claims with the brokers it employs. Thus, while "[a] business entity has the right to communicate with its customers over the normal course of business, including discussing offers to settle[,]... it may not give 'false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3).'" *Cty. of Santa Clara,* 2010 WL 2724512, at *3 (citing Manual for Complex Lit. § 21.12)); *see also Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc*., 214 F.R.D. 696, 697-98 (S.D. Ala. 2003). The content of the discussions is what remains unknown and the risk that Plaintiff's counsel, as putative class counsel, are concerned over and seek to eliminate. Doing so

7

now may reduce, or even eliminate, the need for costly and confusing corrective notice to the putative class members.

As the *Kleiner* Court found, "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal." *Kleiner*, 751 F.2d at 1203. More particularly, the Eleventh Circuit in *Kleiner* noted:

> The Supreme Court has acknowledged that unsupervised oral solicitations, by their very nature, are wont to produce distorted statements on the one hand and the coercion of susceptible individuals on the other: [¶] [I]n-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decision making; there is no opportunity for intervention or counter-education....

*Kleiner,* 751 F.2d at 1206. The danger of even *potential* miscommunications is sufficient to warrant intervention by the court. *Abdallah v. Coca–Cola Co.,* 186 F.R.D. 672, 678 (N.D. Ga. 1999) ("Coca–Cola has not given the Court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation in this case. But simple reality suggests that the danger of coercion is real and justifies the imposition of limitations on Coca–Cola's communications with potential class members."); *Belt v. Emcare Inc.,* 299 F.Supp.2d 664, 668–69 (E.D. Tex. 2003) (holding that an employer letter to putative class members was coercive because it suggested that the case could affect their employment and it undermined the purpose of collective action by encouraging employees not to join; a brief assurance that the law prohibits retaliation against those who join the suit was not enough to cure the coercive effect).

Moreover, UWM's actions appear to be aimed at limiting their liability by offering putative class members sums of money to release their potentially valuable legal claims. *See*, *Hampton Hardware v. Cotter & Company, Inc.*, 156 F.R.D. at 633 (Defendants' three letters to putative class

8

members asking them not to join the lawsuit were an improper attempt to "reduce the class members' participation in the lawsuit based on threats to their pocketbooks."). These sums of money could possibly be for amounts **less than** the true value of the putative class members' claims. Such communications are surely abusive and threaten the proper functioning of class actions generally, particularly this one.[5]

### C. There is a Sufficient Record to Support the Limited and Narrow Relief Requested by Plaintiff

As described above, there is little question that UWM has communicated with putative class members. Defense counsel admitted this on Jun 7, 2022 and again repeated they will not stop such communications on June 13th. In fact, Defendant has acknowledged that is has, and insists on continuing, the right to speak with brokers directly, ex parte, about the 12-month EPO – i.e. the contract claim raised in the instant class action. Thus, unless counsel for the brokers' were present, the ex-parte communications described above **have actually occurred**. In the face of this admission, Plaintiffs' counsel requested details about the communications, but it was denied. Therefore, there is a real and present risk that UWM's actions will undermine the class action process, a refusal by defendant or its attorneys do address that risk and remove any doubt as to the risk, and therefore warrant action by the Court to order the communication to stop until the record is developed to decide whether corrective or further action is required.

It is worth noting that the Court's authority to limit UWM's First Amendment protections over speech is not limitless. An order limiting communication between parties and potential class members "should be based on a clear record and specific findings that reflect weighing of the need for limitation and potential interference with rights of the parties." *Gulf Oil*, 452 U.S. at 101-02.

---

[5] Discovery aimed at finding answers to these questions will be served and, if necessary, the Court will be advised of any facts that are germane to the risks highlighted in this Motion.

To that end, a deposition notice has been issued to UWM to secure any information that might still be lacking and provide a more robust record.

However, "Rule 23(d) does not...require a finding of actual harm; it authorizes the imposition of a restricting order to guard against the 'likelihood of serious abuses.'" *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988). Courts recognize that pre-certification communications with potential class members do not have to be false or misleading to be improper. *Cty. of Santa Clara,* 2010 WL 2724512, at *4 ("While there were not any alleged misstatements in the letter, it was inadequate to inform the putative class."); *In re Sch. Asbestos Litig.*, 842 F.2d at 683 ("A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion."). Instead, when communicating with the putative class, parties are instructed to provide "objective, neutral information about the nature of the claim" so that potential class members may make an educated decision. *Kleiner*, 751 F.2d at 1203. "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal." *Id*.

Therefore, Plaintiffs have limited their current request to simply order UWM and its attorneys to discontinue any further ex-parte communications with putative class members about the 12-month EPO or resolving the related damages as pleaded in the instant lawsuit. That temporary and limited restriction on UWM's First Amendment rights is fully authorized under case law and does not prejudice UWM. Once the full record is developed, including obtaining copies of any communications issued, or releases obtained, by UWM, the Court can consider

10

further actions such as curative notice[6], setting aside releases or sanctions.

## III. CONCLUSION

Only the Court can protect the putative class members from any abuses of absent class members' rights. Here, no one knows exactly what UWM is communicating to the brokers about the case, how they are describing the strength of the claims or possible damages, or anything else that could reasonably effect a broker's decision to retain their claims and stay a part of the class action, or settle.[7] In addition, no one knows what promises UWM is making and/or has made, the content of any releases being extracted, or whether putative class members are/were given time to consult with an attorney of their choosing before taking any action. UWM has kept everyone, including the Court, in the dark. And they refuse to stop whatever it is they are doing for even one week.

For all the above reasons, the Court is empowered to stop the ex-parte communications based on 1) the potential for harm to absent class members and the proper functioning of this case, 2) the interference it is causing with the Court's direction to engage in settlement discussions, and 3) the avoidance of unnecessary litigation activity. In contrast, there is no sound reason to allow UWM to continue in its campaign to contact its brokers ex-parte and discuss the case, including settlement and releases, while a class action is pending. UWM's tactics are abusing the judicial process, and now that they have come to light, the abusive practice should be stopped, before any

---

[6] In addition to stopping Defendants' *ex-parte* communications, the Court may need to rebut Defendants' statements. "[T]he usual cure for false speech is more speech." *Zarate v. Younglove,* 86 F.R.D. 80, 90 n. 13 (C.D. Cal. 1980). In cases where defendants provide misleading information to the class, courts often order them to provide curative notice. *Cheverez v. Plains All Am. Pipeline, LP*, No. CV15–4113 PSG (JEMx), 2016 WL 861107, at *6 (C.D. Cal. Mar. 3, 2016) (citing Fed. R. Civ. P. 23(d)(1)(B)).

[7] More will be revealed after the deposition on the issues is completed and copies of any communications and release are obtained.

further harm might occur, and to ensure any damages are promptly remediated. This includes allowing any putative class member who has signed a release the opportunity to consult with Plaintiffs' Counsel and reconsider their decision to settle with UWM.

For the reasons stated herein, Plaintiffs respectfully request an Order from this Court requiring the following:

1) The parties, including the parties' counsel, not engage in any unsolicited pre-certification communications regarding this action, any claims or defenses relating to UWM's extension of the EPO from 6 months to 12 months, and including, specifically, settlement of the alleged damages, with any putative class member unless pre-approved by the Court;

2) Defendant shall provide to Plaintiffs (a) a complete list of all putative class members UWM has discussed the extended 12-month EPO or settlement of the related commission amounts discussed since December 11, 2020 and during which such discussions were had without legal counsel for the brokers being present; and (b) copies of all said communications in writing, or electronic form, between itself and putative class members;

3) A status conference following production of the above items and completion of the Rule 30(b)(6) deposition on the issues of ex-parte communications between UWM and putative class members to discuss the issues and need for, or termination of, continued restrictions on UWM's communications with putative class members, including whether corrective measures are appropriate based on what was learned in discovery; and

4) Any further relief the Court finds necessary and appropriate.

Dated: June 15, 2022                    Respectfully Submitted,

                                                 **SOMMERS SCHWARTZ, P.C.**

                                                 */s/ Jason J. Thompson*
                                                 Jason J. Thompson (P47184)
                                                 Alana Karbal (P82908)
                                                 One Towne Square, 17th Floor
                                                 Southfield, Michigan 48076
                                                 (248) 355-0300
                                                 jthompson@sommerspc.com
                                                 akarbal@sommerspc.com

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2022, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

>  */s/ Wendy  Vaughn*
> Wendy Vaughn
> Sommers Schwartz, P.C.
> One Towne Square, 17th Floor
> Southfield, MI  48076
> (248) 355-0300